This case raises the question whether § 6-5-338(a), Ala. Code 1975, provides immunity for a city police officer who, while acting in the line and scope of his official duties, drives an automobile at a speed exceeding the posted limit but fails to use audible or visual emergency signals and that failure results in an automobile accident that causes physical injury or property damage. We conclude that the "immunity from tort liability" granted by § 6-5-338(a) to the driver of an "authorized emergency vehicle" applies only when the driver is using an audible signal meeting statutory requirements and is meeting the requirements of any law requiring that visual signals be used on emergency vehicles. Therefore, we reverse the summary judgment entered for the municipality and its police officer, and we remand the case.
 Facts and Procedural History
On December 24, 1997, at approximately 8:30 p.m., a dispatcher for the Bay Minette Police Department received a report of a domestic disturbance and relayed that report over the Department's radio system. Clarence Crook III, who at that time was a sergeant, was on duty in his office at the Department's headquarters near the Baldwin County Courthouse. Crook testified that upon hearing the report he left his office, got in his Department-owned automobile, and began driving toward the address relayed by the dispatcher. He drove south on Hoyle Avenue, stopping briefly at a railroad crossing.
As Crook entered the intersection where Clay Street intersects with Hoyle Avenue from the west and Williams Street intersects with Hoyle Avenue from the east, a truck driven by Ronald Davis also entered the intersection from Williams Street, to Crook's left. Crook attempted to avoid Davis's truck by swerving to the right; however, Davis's truck nonetheless struck the left-rear quadrant of Crook's car.
An automobile driven by Lynne Louise Williams, in which Gregory Tate, Gregory Williams, and Royanna Jones were passengers, had been stopped on Clay Street at its intersection with Hoyle Avenue. Williams testified that her vehicle was stopped at the stop sign where Clay Street intersects with Hoyle Avenue when she saw Crook's car approaching from her left. There appears to be some dispute whether Williams's car had already begun moving into the intersection or whether it was still stopped, but it is undisputed that the front of Crook's car struck Williams's car.
It is also undisputed that it was dark and rainy at the time of the accident. It is further undisputed that Crook had not turned on either his car's flashing blue lights or its siren. Crook testified that he did not use either the blue lights or the siren because he was concerned that using them might alert anyone at the site of the domestic disturbance to the imminent arrival of the police and that anyone seeking to evade the police might thus have had an opportunity to flee. The record reflects some dispute over the precise speed at which Crook was travelling as he approached the intersection, although it appears undisputed that Crook was exceeding the speed limit.
Lynne Louise Williams, Gregory Tate, Gregory Williams, and Royanna Jones sued Crook, the City of Bay Minette, and Ronald Davis, the driver of the third vehicle, seeking damages in compensation for property damage, physical injuries, and mental anguish. Crook and the City of Bay Minette moved for a summary judgment, arguing that § 6-5-338, Ala. Code 1975, provided Crook, and therefore the City as well, with immunity from tort liability in regard to the collision. The trial judge granted that motion and entered a summary judgment for Crook and the City.[1] The plaintiffs appealed. *Page 1076 
 Discussion
Generally, of course, the State of Alabama and its officers and political subdivisions are not subject to suit. See Ala. Const. 1901, Art. I, § 14. That constitutional immunity does not extend to municipalities, and, since this Court decided Jackson v.City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), the doctrine of municipal immunity has not protected cities and their employees from tort liability. As this Court has previously held, though, public officials, including municipal employees, have substantive immunity from tort liability for actions taken while they are acting in the line and scope of their official duties and are engaged in the exercise of a discretionary function. Phillips v.Thomas, 555 So.2d 81, 84 (Ala. 1989).
Further, the Legislature has specifically provided that immunity to police officers. Section 6-5-338(a), Ala. Code 1975, gives police officers "immunity from tort liability" under certain circumstances:
 "(a) Every peace officer, except [a constable], who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is employed by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."
(Emphasis added.)
It is undisputed that Crook was acting in the line and scope of his official law-enforcement duties when the accident giving rise to this litigation occurred. Thus, if the act that is alleged to have caused the accident was "conduct in performance of any discretionary function," then the summary judgment was appropriate. In the alternative, of course, if the act that is alleged to have caused the accident was not "conduct in the performance of any discretionary function," then the summary judgment should be reversed.
The appellate courts of this State have previously considered the definition of "discretionary acts":
 "Alabama law has defined `discretionary acts' as "[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take" and those requiring "exercise in judgment and choice and [involving] what is just and proper under the circumstances." Black's Law Dictionary 467 (6th ed. 1990); see also Smith v. Arnold, 564 So.2d 873, 876 (Ala. 1990).' L.S.B. v. Howard, 659 So.2d 43, 44 (Ala. 1995). Discretionary acts require `constant decision making and judgment.' Phillips v. Thomas, 555 So.2d 81, 85 (Ala. 1989); L.S.B. v. Howard, supra."
Montgomery v. City of Montgomery, [Ms. 2971214, March 26, 1999]732 So.2d 305, 310-11 (Ala.Civ.App. 1999).
Crook and the City rely on White v. Birchfield, 582 So.2d 1085,1087 (Ala. 1991), as support for their argument that the doctrine of substantive immunity should be applied in this case.White, however, is distinguishable from this present case. InWhite, the plaintiff had been arrested by the defendant police officer and had been placed in the rear of the officer's patrol car for transportation to the Chambers County *Page 1077 
jail. White, 582 So.2d at 1085. While en route, the officer received a radio call indicating that a suicide was in progress, and the officer elected to respond to the call. Id. The plaintiff alleged that the officer drove at excessive speeds and that, at one point, the patrol car became airborne, and he alleged that the officer's driving caused him to be knocked against the roof of the car and caused him to incur physical injury. Id. This Court held that the officer was immune from liability because his decision to respond to the suicide call instead of proceeding on to the county jail was the exercise of a discretionary function. Id. at 1087. In reaching that conclusion, this Court quoted with approval from a decision of the Mississippi Supreme Court:
 "The Mississippi Supreme Court has held that, under the distinction between ministerial and discretionary functions, `the official is immune only where that which he does in the performance of his lawful duties requires "personal deliberation, decision and judgment. "`Davis v. Little, 362 So.2d 642, 643
(Miss. 1978) (quoting Prosser, Law of Torts § 132 (4th ed. 1971))."
Id. at 1087. This Court concluded in White:
 "The decision to respond to the radio call and the manner in which [the officer] responded required [the officer] to exercise his own judgment."
Id.
Applying the same principles of law to this case, we conclude that Crook's decision to leave his office and respond to the domestic-disturbance call was one requiring him to exercise personal judgment, because, the evidence indicates, the dispatcher's notification about the disturbance was not directed specifically at him. Further, it was within Crook's discretion to drive at a speed in excess of the speed limit, because the Legislature has provided that the driver of an "authorized emergency vehicle" may do so. See § 32-5A-7, Ala. Code 1975. The key factor we must consider, however, is Crook's decision not to use either his blue lights or his siren.
Although the record shows that Crook stated that he decided not to use his emergency signals for fear that using them would allow a possible suspect to get away from the scene of the domestic disturbance, we conclude that he did not have the discretion to make that decision. The Legislature has specifically provided in § 32-5A-7:
 "(a) The driver of an authorized emergency vehicle, when responding to an emergency call . . ., may exercise the privileges set forth in this section, but subject to the conditions herein stated.
 "(b) The driver of an authorized emergency vehicle may:
". . . .
 "(3) Exceed the maximum speed limits so long as he does not endanger life or property;
". . . .
 "(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal meeting the requirements of section 32-5-213 and visual requirements of any laws of this state requiring visual signals on emergency vehicles."
(Emphasis added.)
Thus, under the express provision of the statute, we must conclude that Crook did not have the discretion to exceed the speed limit unless he also complied with the provisions of §32-5A-7(c), and he admittedly did not do that. Thus, the accident that gave rise to the plaintiffs' claims is not alleged to have been the result simply of actions as to which Crook was called upon to exercise his personal judgment. Although he did have the discretion to decide whether he would drive in excess of the speed limit, once he made that decision he did not have the discretion to further decide whether he would comply with the audible-and visual-signal requirements of § 32-5A-7(c). See Smith v.Bradford, *Page 1078 475 So.2d 526 (Ala. 1985), where this Court held that the evidence presented a jury question as to whether a state trooper acted wantonly when he exceeded the speed limit in pursuit of another car but did not use either his blue lights or his siren and where the trooper's car struck and killed a child riding a bicycle.
We conclude that the immunity from tort liability provided by § 6-5-338(a), Ala. Code 1975, does not apply in this case. The summary judgment, therefore, must be reversed.
REVERSED AND REMANDED.
Hooper, C.J., and Cook, Lyons, and Johnstone, JJ., concur.
[1] The summary judgment did not resolve the plaintiffs' claims against Davis. Pursuant to Rule 54(b), Ala.R.Civ.P., the trial judge entered an order making the summary judgment final as to the plaintiffs' claims against Crook and the City of Bay Minette.